DAVID R. ZARO (BAR NO. 124334)
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
MATTHEW D. PHAM (BAR NO. 287704)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  dzaro@allenmatkins.com
            jdelcastillo@allenmatkins.com
            mpham@allenmatkins.com

Attorneys for Plaintiff
GEOFF WINKLER, RECEIVER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFF WINKLER, Receiver,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>KARL DAVIS, co-trustee of the ROBERT LARGURA ADMINISTRATIVE TRUST ESTABLISHED APRIL 22, 2022; WAYNE SIEMENS, co-trustee of the ROBERT LARGURA ADMINISTRATIVE TRUST ESTABLISHED APRIL 22, 2022; and DOES 1–10, inclusive,<br><br>　　　　Defendants. | Case No. 2:21-cv-04534-FMO-AFM<br><br>**STIPULATION FOR ORDER APPROVING SETTLEMENT AGREEMENT** |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

The following stipulation (the "Stipulation") is entered into by and between the following parties, through their respective counsel: (1) plaintiff Geoff Winkler (the "Receiver"), the Court-appointed permanent receiver for Essex Capital Corporation ("Essex") and its subsidiaries and affiliates (collectively, with Essex, the "Receivership Entities" or "Entities"), on the one hand, and (2) defendants Karl Davis and Wayne Siemens (together, the "Largura Trustees," and collectively, with the Receiver, the "Parties"), the trustees of the Robert Largura Administrative Trust established April 22, 2022 (the "Largura Trust"), the successor in interest to former defendant Robert Largura ("Largura"), on the other hand. This Stipulation is based on the following recitals:

**Recitals**

1. On December 21, 2018, the Receiver was appointed as the permanent receiver for the Receivership Entities in the Securities and Exchange Commission's enforcement action captioned as *SEC v. Ralph Iannelli, et al.* and bearing Case No. 2:18-cv-05008-FMO-AFM (the "SEC Action") under the *Order Regarding Preliminary Injunction and Appointment of a Permanent Receiver* (the "Appointment Order"). SEC Action ECF No. 66. Pursuant to the Appointment Order, the Receiver has been vested with exclusive authority and control over the Receivership Entities and their assets (the "Receivership Assets"). On September 9, 2019, in the SEC Action, the Court entered the *Order Regarding Permanent Injunction* (the "Permanent Injunction"), SEC Action ECF No. 113, which reaffirmed the authority initially conveyed upon the Receiver via the Appointment Order.

2. Among other things, the Appointment Order and Permanent Injunction authorized, empowered, and directed the Receiver to (a) assume exclusive authority and control over all Receivership Assets; (b) enter into those agreements the Receiver deems necessary and advisable in discharging his duties as receiver; and (c) institute, compromise, adjust, appear in, intervene in, or become party to such

1  actions or proceedings in state, federal, or foreign courts, which the Receiver deems
2  necessary and advisable to (i) preserve or recover any Receivership Assets or
3  (ii) carry out his mandate under the Appointment Order and the Permanent
4  Injunction.

5       3.     On November 12, 2020, in the SEC Action, this Court entered its
6  *Order Granting Motion of Receiver, Geoff Winkler, for Authority to Establish*
7  *Disgorgement Procedures and Undertake Disgorgement Efforts* (the "Disgorgement
8  Order").  SEC Action ECF No. 195.  The Disgorgement Order authorized the
9  Receiver to, among other things, commence litigation against investors in the
10 Receivership Entities whom the Receiver identified as having been paid a net profit
11 from their investments in the Entities, which the Receiver contends are the proceeds
12 of a Ponzi investment scheme, and therefore Receivership Assets subject to
13 disgorgement.  The Disgorgement Order also limited the Receiver's unilateral ability
14 to settle disgorgement claims below a certain recovery threshold, absent further
15 order of the Court.

16      4.     On June 2, 2021, the Receiver filed a complaint titled *Complaint for*
17 *Fraudulent Transfer* (the "Complaint"), ECF No. 1, against Largura, commencing
18 the above-captioned civil action.  The Complaint alleged claims for relief for the
19 avoidance and recovery of actual fraudulent transfers and constructively fraudulent
20 transfers and sought to recover alleged Ponzi profits from Largura.

21      5.     In accordance with the *Scheduling and Case Management Order re:*
22 *Jury Trial* (the "Scheduling Order"), ECF No. 18, the Receiver and Largura, and
23 their respective counsel, were set to participate in a mandatory settlement
24 conference (the "MSC") before the Honorable Alexander F. MacKinnon on April 8,
25 2022.  Around that time, the Receiver had believed that Largura received
26 $746,560.45 in net profit based on the Receiver's money-in, money-out ("MIMO")
27 accounting, which reflected Largura receiving $2,255,560.45 from the Receivership
28 Entities while investing or contributing $1,509,000 in or to the Entities.  But

1  immediately prior to the MSC, Largura transmitted previously undisclosed financial
2  records to the Receiver, which records, if confirmed by the Receiver as reflecting
3  legitimate transactions between the Receivership Entities and Largura, would have
4  resulted in an adjustment to the MIMO accounting for Largura.

5      6.     The MSC before Judge MacKinnon proceeded as scheduled on April 8,
6  2022, but the Receiver required more time to perform an additional accounting
7  review of the Receivership Entities' transaction history with Largura in light of the
8  records recently received from Largura, which was necessary before the parties
9  could have more productive settlement discussions.  Accordingly, that same day, the
10 Receiver and Largura entered into a stipulation to extend the deadline for the parties
11 to complete the MSC (i.e., participate in a second MSC session) by April 29, 2022,
12 ECF No. 25, which was subsequently approved by this Court, ECF No. 27.

13     7.     The Receiver completed his additional accounting review and
14 determined that the amount of the net profit received by Largura should be reduced
15 to $402,653.40, the adjusted amount in controversy that the parties could
16 purportedly agree to for settlement purposes in the second MSC session.  However,
17 the second session did not take place as Largura passed away on April 22, 2022.

18     8.     Upon his passing, the Largura Trust became Largura's successor in
19 interest for all purposes relevant to this action, including with respect to the claims
20 asserted by the Receiver against Largura herein.  On July 13, 2022, the Court
21 entered an order substituting the Largura Trustees, in their capacity as trustees of the
22 Largura Trust, for Largura as defendants in this action.  ECF No. 35.

23     9.     Notwithstanding Largura's passing, counsel for the Receiver and for the
24 Largura Trustees continued their settlement discussions.  As a result of those
25 discussions, the Parties reached an agreement, now memorialized in the fully
26 executed *Settlement Agreement and Mutual Release* (the "Settlement Agreement")
27 appended hereto as **Exhibit 1**.  Pursuant to the terms of the Settlement Agreement,
28 after approval by this Court, the Largura Trustees, on behalf of the Largura Trust,

will make a payment to the Receiver in the amount of $241,592.04 (representing 60% of the $402,653.40 adjusted amount in controversy), in full satisfaction of the Receiver's claims, after which this action will be dismissed, with prejudice.

10. Given the adjusted amount in controversy in the above-captioned action, and the cost and uncertainty associated with litigating the Receiver's claims, particularly in light of Largura's passing, the Receiver has determined, in his reasonable business judgment, that settlement in this matter is proper, and that the Settlement Agreement provides for an appropriate return of funds in connection with the Receiver's pending claims.

11. The Largura Trustees likewise believe that, given the amount in controversy in the above-entitled action, and the cost and uncertainty associated with defending against the Receiver's claims, settlement in this matter is appropriate.

12. The Parties therefore are jointly requesting that this Court enter an order approving the Settlement Agreement and authorizing the Parties to perform their respective obligations as provided therein.

## **Stipulation**

Based on the foregoing, and subject to this Court's approval, the Parties stipulate and agree as follows:

1. The Parties jointly request that the Court approve the Settlement Agreement between the Receiver and the Largura Trustees, on behalf of the Largura Trust, in its entirety;

2. If the Settlement Agreement is approved, the Parties further jointly request that the Court authorize the Parties to perform their respective obligations as set forth in the Settlement Agreement; and

3. If the Settlement Agreement is approved, pursuant to *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 381–82 (1994), and the terms of the Settlement Agreement, this Court shall retain exclusive jurisdiction

with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Settlement Agreement.

Dated: August 9, 2022

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
DAVID R. ZARO
JOSHUA A. DEL CASTILLO
MATTHEW D. PHAM

By:   */s/ Matthew D. Pham*
MATTHEW D. PHAM
Attorneys for Plaintiff
GEOFF WINKLER, RECEIVER

Dated: August 9, 2022

JAMES L. HUDGENS, APC
JAMES L. HUDGENS

By:   */s/ James L. Hudgens*
JAMES L. HUDGENS
Attorneys for Defendants
KARL DAVIS and WAYNE SIEMENS, trustees of the ROBERT LARGURA ADMINISTRATIVE TRUST ESTABLISHED APRIL 22, 2022

## **SIGNATURE CERTIFICATION**

In accordance with Civil Local Rule 5-4.3.4(a)(2)(i), the filer hereby attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 9, 2022

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
MATTHEW D. PHAM

By:   */s/ Matthew D. Pham*
MATTHEW D. PHAM
Attorneys for Plaintiff
GEOFF WINKLER, RECEIVER

# EXHIBIT 1

Exhibit 1
Page 7

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "**Agreement**"), dated as of ~~July XX~~ **August 3**, 2022 (the "**Effective Date**"), is made by and between Geoff Winkler (the "**Receiver**"), solely in his capacity as the court-appointed permanent receiver for Essex Capital Corporation ("**Essex**") and its subsidiaries and affiliates (collectively, with Essex, the "**Receivership Entities**") in connection with the Securities and Exchange Commission (the "**Commission**") enforcement action styled <u>SEC v. Ralph Iannelli, et al.</u>, pending in the United States District Court for the Central District of California (the "**District Court**") as Case No. 2:18-cv-05008-FMO-AFM (the "**Enforcement Action**" or "**EA**"), on the one hand, and Karl Davis and Wayne Siemens (together, the "**Largura Trustees**"), sole in their capacity as co-trustees of the Robert Largura Administrative Trust Established April 22, 2022 (the "**Largura Trust**"), successor in interest to Robert Largura ("**Transferee**"), on the other hand. Collectively, the Receiver and Largura Trustees are sometimes referred to herein as the "**Parties**" or individually as a "**Party**."

## RECITALS

A. On June 15, 2018, the Commission commenced the Enforcement Action by filing a Complaint (ECF No. 1) in the United States District Court for the Central District of California (the "**District Court**") against Defendants Ralph T. Iannelli, Jr. ("**Iannelli**") and Essex.

B. On December 21, 2018, the Receiver was appointed as the permanent receiver for the Receivership Entities in the Enforcement Action, pursuant to the District Court's Order Regarding Preliminary Injunction and Appointment of a Permanent Receiver (the "**Appointment Order**") (EA ECF No. 66). The Appointment Order vested the Receiver with exclusive authority and control over the Receivership Entities, including their bank accounts, assets, and books and records (collectively, "**Receivership Assets**"), and assigned him certain duties including, but not limited to, marshalling and preserving Receivership Assets.

C. On September 9, 2019, the District Court entered its Order Regarding Permanent Injunction (the "**Permanent Injunction**") (EA ECF No. 113), which reaffirmed the powers and authority initially conferred upon the Receiver pursuant to the Appointment Order.

D. In accordance with his rights and duties under the Appointment Order and the Permanent Injunction, the Receiver conducted an investigation and accounting of funds transferred into and out of the Receivership Entities, including with respect to amounts received from and paid to Receivership Entity investors and creditors. Among other things, the Receiver concluded, on the basis of his investigation and accounting, that the business and financial activities of the Receivership Entities bear the hallmarks of a Ponzi investment scheme.

E. On November 12, 2020, the District Court entered its Order Granting Motion of Receiver, Geoff Winkler, for Authority to Establish Disgorgement Procedures and Undertake Disgorgement Efforts (the "**Disgorgement Order**") (EA ECF No. 195). Pursuant to the Disgorgement Order, the Receiver was authorized to commence disgorgement efforts, including litigation in the District Court, against investors and other creditors whom he determined profited as a result of their investments in or other monetary contributions to the Receivership Entities.

   F. Based upon his investigation and accounting, the Receiver initially determined that during all periods relevant to his prospective claims for voidable or fraudulent transfer(s), or other disgorgement(s), Transferee received a net amount of **$463,483.13** (the "**Profit Amount**") from the Receivership Entities, in excess of any amounts paid to or value conferred upon the Receivership Entities (collectively, the "**Transfers**") by Transferee.  The Receiver has demanded return of the Profit Amount from Transferee.  After the commencement of the litigation identified in Recital G, below, Transferee provided the Receiver with additional information and documents relating to the Profit Amount and the Transfers.  On the basis of this information, the Receiver recalculated the Profit Amount, resulting in a reduction of the Profit Amount to $402,653.40 (the "**Amended Profit Amount**").  Transferee acknowledged receipt of the Amended Profit Amount from the Receivership Entities, but maintained certain defenses to the disgorgement of the Amended Profit Amount to the Receiver.

   G. On the basis of the Receiver's determination, as referenced in Recital F, above, that Transferee had received profits paid from what he contended was a Ponzi investment scheme, on June 1, 2021, the Receiver commenced the action styled <u>Winkler v. Largura, et al.</u>, pending in the District Court as Case No. 2:21-cv-04534-FMO-AFMx (the "**Disgorgement Action**" or "**DA**").  In the Receiver's Complaint for Fraudulent Transfer (the "**Complaint**") in the Disgorgement Action (DA ECF No. 1), the Receiver alleged causes of action against the Transferee for Avoidance and Recovery of Actually Fraudulent Transfers and Avoidance and Recovery of Constructive Fraudulent Transfers.

   H. Transferee passed away on April 22 2022, days after the commencement of Mandatory Settlement Conference sessions in the Disgorgement Action.  Upon Transferee's passing, the Largura Trust became Transferee's successor in interest for all purposes relevant to the Disgorgement Action, including with respect to the claims asserted by the Receiver against Transferee in the Disgorgement Action, and the Largura Trustees are the co-trustees of the Largura Trust.

   I. Through their respective counsel, the Receiver and the Largura Trustees thereafter continued settlement discussions in the hopes of bringing the litigation of the Disgorgement Action to a close, a goal that became more critical after the passing of Transferee.

   J. On July 13, 2022, the District Court entered the Order Approving Stipulation Regarding Substitution of Defendant (DA. ECF No. 35), which substituted the Largura Trustees, in their capacity as co-trustees of the Largura Trust, for Transferee as defendants in the Disgorgement Action.

   K. Having considered their respective claims and defenses, including in connection with information exchanged during and after the confidential mediation sessions held in connection with the Disgorgement Action, which information is confidential pursuant to the mediation and settlement privilege, the Receiver and the Largura Trustees now wish to avoid the expense and uncertainty associated with litigation and have agreed to settle and resolve all disputes, and release all claims arising from or relating to or arising in connection with the Disgorgement Action, including with respect to the Profit Amount and the Transfers, under the terms and conditions set forth herein.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the foregoing recitals and the covenants, terms, and conditions hereinafter contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned agree as follows:

1. <u>Court Approval</u>.  No more than thirty (30) days after the Effective Date, the Receiver and the Largura Trustees shall apply to the District Court for approval of this Agreement, in the Enforcement Action or the Disgorgement Action, via stipulation, motion, or application.  The Parties' respective obligations under this Agreement shall be expressly conditioned upon an order of the District Court approving this Agreement.  In the event that the District Court does not enter an order approving this Agreement, this Agreement shall be null and void and the Parties agree to confer and work cooperatively to schedule new discovery and trial dates, and associated deadlines.

2. <u>Payment</u>.  No later than forty-five (45) calendar days after the issuance of an order from the District Court approving this Agreement, the Largura Trustees, on behalf of the Largura Trust, shall pay to the Receiver, in accordance with the terms set forth herein, a total of **$241,592.04** (the "**Settlement Payment**") via wire transfer and in one lump sum.  No later than ten (10) business days after the Effective Date, the Receiver shall provide wiring instructions to the Largura Trustees' counsel of record, in connection with the Largura Trustees' payment to the Receiver of the Settlement Payment.

3. <u>Dismissal</u>.  No later than ten (10) business days after the Receiver's receipt of the Settlement Payment described in Paragraph 2, above, the Parties shall file a Joint Stipulation in the District Court providing for the dismissal of the Disgorgement Action, with prejudice.

4. <u>Mutual Release</u>.  On the condition that the Settlement Payment due under **Paragraph 2**, above, has been paid in full, the Receiver, on the one hand, and the Largura Trustees, in their capacity as co-trustees of the Largura Trust, on the other hand, and each of them, for themselves, their agents, employees, attorneys, partners, directors, officers, successors and assigns, forever, irrevocably and unconditionally release and discharge one another, and their respective officers, directors, representatives, heirs, executors, administrators, receivers, successors, assigns, predecessors, agents, attorneys, and employees, of and from any and all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, awards and judgments arising from or in connection with the Enforcement Action and the Disgorgement Action, including with respect to the Profit Amount, the Transfers, and Transferee's investments in the Receivership Entities (including payments, if any, to Iannelli), all of which claims are hereinafter called the "**Released Claims**."

The Receiver and Largura Trustees, individually and collectively, acknowledge and agree that the Released Claims may include claims of every nature and kind whatsoever, whether known or unknown, suspected or unsuspected, and further acknowledge that they may be presently unknown or unsuspected, and may be based upon hereafter discovered facts different from, or in addition to, those which they now know, or believe to be true.  Nevertheless, the Parties agree that the foregoing release shall be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof, and further hereby expressly waive and relinquish any and all rights provided in California Civil Code Section 1542 which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

The Receiver and Largura Trustees expressly waive and release any rights and benefits that they have or may have under any similar law or rule of any other jurisdiction pertaining to the matters released herein. It is the intention of the Parties through this Agreement and with the advice of counsel to fully, finally, and forever settle and release the claims and disputes existing between them as provided herein, known or unknown. The releases herein given shall be and remain in effect as full and complete releases of all such matters notwithstanding the discovery of any additional claims or facts relating thereto.

5. <u>Voluntary Signing</u>. Each of the Parties to this Agreement has executed this Agreement without any duress or undue influence.

6. <u>Independent Counsel</u>. Each of the Parties acknowledge and agree that it has been represented by independent counsel of its own choice throughout all negotiations which preceded the execution of this Agreement, that it has executed and approved of this Agreement after consultation with said counsel, and that it shall not deny the validity of this Agreement on the ground that such Party did not have the advice of legal counsel.

7. <u>Governing Law and Venue</u>. This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of California, and subject to the exclusive jurisdiction of the District Court.

8. <u>Construction and Interpretation</u>. The headings in this Agreement are inserted for convenience only and will not be deemed a part of the Agreement for construction or interpretation purposes. The Parties expressly declare that they each participated in the negotiation of this Agreement, and that therefore no ambiguities in this Agreement may be resolved in favor of one Party because the other Party was the drafter. No Party is the designated drafter of this Agreement.

9. <u>No Assignment</u>. The Parties represent that they have not assigned, transferred, or purported to assign or transfer to any person or entity any claims, demands, liabilities, damages, actions or causes, suits and/or controversies of any kind and every nature that are released herein, and no other person or entity has any interest in any claims, demands, liabilities, damages, actions or causes, suits and/or controversies of any kind and every nature that are released herein, provided that the Receiver shall not be barred from assigning his or the Receivership Entities' rights under this Agreement after the Effective Date.

10. <u>No Admission of Liability</u>. The Agreement does not constitute, nor shall it be construed as, an admission or concession by any of the Parties for any purpose. By executing this Agreement, none of the Parties admits wrongdoing, liability, or fault in connection with, or to the merit of, the Enforcement Action, or the allegations asserted therein.

11. <u>Waiver/Amendment</u>. No breach of any provision of this Agreement can be waived unless in writing. Waiver of any one breach of any provision of this Agreement is not a

waiver of any other breach of the same or of any other provision of this Agreement. Amendment of this Agreement may be made only by written agreement signed by the Parties.

   12. <u>Fax and Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same Agreement. Additionally, signature pages delivered via facsimile or electronic mail in portable document format (.pdf) shall be deemed original.

   13. <u>Acts in Furtherance of Purpose of Agreement</u>. Each of the Parties to this Agreement shall execute all documents and do all acts necessary to carry out the purpose of this Agreement.

   14. <u>Attorneys' Fees and Costs</u>. The Parties hereto shall each bear their own costs and attorneys' fees incurred in connection with the negotiation and documentation of this Agreement, and the Parties' efforts to obtain District Court approval thereof. If any proceeding, action, suit, or claim is undertaken to interpret or enforce this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in connection with such dispute.

   15. <u>Notices</u>. Notices to be provided hereunder shall be effective if sent to the following:

<u>To the Largura Trustees</u>:

Karl Davis and Wayne Siemens, Co-Trustees
of the Robert Largura Administrative Trust Established April 22, 2022
c/o James L. Hudgens, Esq.
James L. Hudgens, APC
15 w. Carrillo St., Suite 220
Santa Barbara, CA 93101
jlh@jlhudgenslaw.com



<u>To the Receiver</u>:

Geoff Winkler
American Fiduciary Services, LLC
715 NW Hot Street #4364
Portland, OR 97208

With a copy to:
Joshua A. del Castillo, Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
jdelcastillo@allenmatkins.com

ROBERT LARGURA ADMINISTRATIVE
TRUST ESTABLISHED APRIL 22, 2022

By: _____
    KARL DAVIS, co-trustee


By: _____
    WAYNE SIEMENS, co-trustee


GEOFF WINKLER, solely in his capacity as
Court-appointed permanent receiver for Essex
Capital Corporation and its subsidiaries and
affiliates

By: ___/s/ Geoff Winkler_____
    GEOFF WINKLER, court-appointed
    receiver

ROBERT LARGURA ADMINISTRATIVE
TRUST ESTABLISHED APRIL 22, 2022

By: _____
  KARL DAVIS, co-trustee


By: _____
  WAYNE SIEMENS, co-trustee


GEOFF WINKLER, solely in his capacity as
Court-appointed permanent receiver for Essex
Capital Corporation and its subsidiaries and
affiliates

By: _____
  GEOFF WINKLER, court-appointed
  receiver

ROBERT LARGURA ADMINISTRATIVE
TRUST ESTABLISHED APRIL 22, 2022

By: _____
    KARL DAVIS, co-trustee

By: ___*/s/ Wayne Siemens*_____
    WAYNE SIEMENS, co-trustee


GEOFF WINKLER, solely in his capacity as
Court-appointed permanent receiver for Essex
Capital Corporation and its subsidiaries and
affiliates

By: _____
    GEOFF WINKLER, court-appointed
    receiver